*Bennington, February, 1824.*

*Deming & Wellman vs. Hurlbut.*

---

BRACE *vs.* SQUIRE and ROBINSON.

If a writ of error be made returnable, not to the next term of the Supreme Court, one or more terms intervening between the allowance of the writ and the return, it is irregular and void, and cannot be made to operate as a supersedeas. In such case a second writ of error may be a supersedeas.

Bail on a writ of error are not in all cases holden for the amount of the judgment if it be affirmed, but by statute are made liable only for the actual damages occasioned by the delay, and for single or double costs as they may in the discretion of the Court be taxed on the affirmance of the judgment.

THIS was an action of debt on a bond of recognizance in the penal sum of $1200, for the prosecution of a writ of error, entered into agreeably to the eight section of the Judiciary Act, passed November 4, 1797. (1 Stat. 57.)

The writ was dated October 25, 1820, from which, and the pleadings thereon, in which oyer of the former proceedings was prayed and granted, the following facts appeared: That the plain-

*Bennington, May, 1824.*

Bennington,
May,
1824.

Brace
vs.
Squire and
Robinson.

tiff, on the 6th day of May, 1817, took out a writ of attachment against one Daniel Rogers of Hoosac, in the State of New-York, which was duly served, and upon which bail was entered. That on the 3d Monday of December, 1817, the plaintiff recovered judgment thereon, before the Bennington County Court, for the sum of $990 88 damages, and $21 94 costs of suit, and thereof prayed out execution dated January 5, 1818, and made returnable within sixty days from date. That this execution was put into the hands of an officer, who, on the 2d day of March, 1818, made the following return thereon :—" By virtue of the within execution, I have made the most diligent search throughout my precinct, and connot find either the body of the said Daniel Rogers, or any property or estate whereon to levy or satisfy this execution. Attest, Hiram Hinsdale, Constable." That on the 23d day of January, 1818, Rogers prayed out a writ of error on said judgment, returnable to the Supreme Court at their term holden at Bennington on ———, on which one David Henry became recognized to the defendant in error, in the sum of $1200, and which was served on the 2d day of March, 1818.

To this writ a plea in abatement was pleaded, for that, a term of the Supreme Court intervened between the *service* and the *return day* of said writ of error; and the same was for that cause abated. That afterwards, on the 22d day of January, 1819, the said Rogers prayed out a second writ of error, in which the present defendants became recognised to the said Brace in the said sum of $1200, upon which was indorsed the certificate of the *oath* agreeably to the 1st section of the act of November 1, 1809, and which was duly served on the 9th day of June, 1819. That afterwards, at the January term of the Supreme Court, holden at Bennington, A. D. 1820, the judgment of the County Court was, upon the second writ of error affirmed ; and there was also added to the judgment, damages for the detention of said debt, with the additional costs on said writ of error, amounting in the whole to the sum of $1114 74 damages, and $31 84 costs ; upon which last judgment execution was also issued, and returned with a *non est inventus* endorsed thereon ; the costs on the affirmance were tendered by the defendants and accepted by the plaintiff without prejudice ; Whereupon the present suit was brought ; pending which, at the

August term, 1821, the following motion was filed by the defend- <span style="float:right">*Bennington,* May, 1824.</span>
ants, with the consent of the plaintiff:—

   " And now the said David Robinson, Jun. and <span style="float:right">Brace</span>
Truman Squire, here in Court, move this Court that upon the <span style="float:right">*vs.*<br>Squire and</span>
payment of the further sum of seventy-five dollars, being the <span style="float:right">Robinson.</span>
*interest* on the sum of debt and cost of the former judgment
from the time of the allowance of the writ of error to the time
of the affirmance, and the *interest* on the same from the time of
affirmance, that the plaintiff stay all further proceedings."

The case was argued by *D. Chipman* and *Langdon* for the
plaintiff, and by *Squire* and *Robinson*, the defendants *pro sese*.

[Skinner Ch. J. and Williams J. having been of counsel in
the cause, did not sit.]

And now at the adjourned term of said Court, holden at Man-
chester, within and for said County, on the 23d day of May, 1824,

AIKENS J. delivered the following opinion :

The more regular course would have been for the defendants
to have moved the Court for a rule upon the plaintiff to shew
cause, why, &c. which would have been granted *nisi,* and, on the
hearing, have been made absolute, or discharged, as justice might
require. As the defendants' motion was intended as a means of
arriving at the same result, I shall pass over this informality
without further remark, and treat the case as though such rule
had actually been granted.

This rule can be supported only upon one of three principles.
1st, That the second writ of error was no supersedeas,—or 2dly,
That the bail on a writ of error is in no case answerable for the
amount of the original judgment, or—3dly, That admitting the
first two positions to be unfounded, still from the facts in this par-
ticular case appearing upon the record, it is conclusive, that no
damage can have accrued to the plaintiff by reason of this writ
of error, beyond the sum stipulated in the motion.

If the first position be tenable, it is clear that the defendants
have been over liberal in the offer contained in their motion ; for
unless the writ of error upon which they became recognised,
possessed the quality of a supersedeas, it could occasion no delay
to the original plaintiff in the collection of his debt—consequent-

*Bennington,*
May,
1824.

Brace
*vs.*
Squire and
Robinson.

ly no damage ; and he would be entitled, on affirmance of his judgment, not even to the interest thereon, pending the writ of error, but simply to his costs, single or double, as the Court in their discretion should award.

It has been attempted to support this position on the ground that the first writ of error was abated, and that for a cause originating in the fault of the party, and consequently that this second writ was not in law a supersedeas. It is true, the authorities seem to go thus far ; (1 Mod. 285. 1 Salk. 263. 8 T. R. 412.) but there is one fact in the case, which, it is apprehended, renders them inapplicable. The cause assigned in the plea of abatement to the first writ of error, was, " that a term of the Supreme Court intervened between the service and the return of the writ." The writ was not therefore, defective and abatable merely, but irregular and absolutely void, (Parsons *v.* Lloyd, 3 Wils. 341. Black 846. 1 Sell. Prac. 83. 3 Dallas.) For if a process may be made returnable past one term, it may past ten ; and the rights of the other party suspended and jeopardized by it for any period. It was, in the language of DeGray, in Parsons *v.* Lloyd, a mere *nullity.* And, although Lord Holt, in Shirly *v.* Wright, 1 Ld. Raym. 775, declares there is a distinction in this respect, between writs of capias with respect to mesne process and execution, yet the reason of the distinction would place a supersedeas on the same footing with mesne process, although it be in form a *summons*, because of its *immediate* effect upon the existing rights of the party. It is true it was pleaded to, but this was unnecessary ; it would have been more properly dismissed on motion. Nor did that proceeding give it the character of an erroneous or defective process, which is good until reversed, and may be abated or amended. That which is void has none of these qualities ; it is binding on no one ; it will not justify the party acting under it ; it is incapable of amendment, and any proceeding founded upon it would be liable to be set aside. The first writ of error being irregular and void, the second is, what it would have been if the first had never existed, a supersedeas from the time of service ; it being regularly sworn to, agreeably to the 1st section of the act concerning writs of error, &c. passed November 1, 1809. It may be proper to remark here, as the contrary was urged in the argument of this cause, that it is not by virtue of

*this* statute, or any other statute of this state, except that adopting the *common law* of England, passed November 4, 1797, that a writ of error, under any circumstances, is a supersedeas here. A writ of error, therefore, which in England would not be a supersedeas of execution, would not possess that quality here, even though all the prerequisites of the statutes on the subject were complied with. They are restrictive, and not creative of any power or quality in the writs to which they relate.

*Bennington,*
*May,*
1824.

Brace
*vs.*
Squire and
Robinson.

The defendants then, having entered into a recognizance, agreeably to the 8th section of the Judiciary Act, for the prosecution of a writ of error; which writ, from the service of it, that is, from the 9th day of June, 1819, was a supersedeas of any execution of the plaintiff then or afterwards in life, upon his original judgment, the question involved in the second position, above named, arises, that is, What is the extent of this obligation?

The terms of the condition are, " that the plaintiff in error shall prosecute his writ to effect, and answer all damages and costs, if he fail to make his plea good." The operation of which, as it regards the *bail*, can be no other than this, that if *he* fail to do it, *they* will do it for him. What then is the true meaning of the expression, " all damages and costs?" In England, no less than five statutes have been passed, providing for bail for the prosecution of writs of error in divers specified cases, and prescribing the condition of recognizances. The first, that of 31 Eliz. c. 3, as it is confined to cases of error after outlawry, contains nothing applicable to the present inquiry. The second was the statute of the 3 Jac. I. c. 8, whereby it is enacted " that no execution shall be stayed, &c. (in certain cases enumerated) unless *such person or persons*, in whose name or names such writ of error shall be brought, *with two sufficient sureties*, such as the Court (wherein such judgment is or shall be given) shall allow of, shall first, before such stay made, or supersedeas to be awarded, be bound unto the party for whom any such judgment is given, by recognizance to be acknowledged in the same Court, in *double* the sum adjudged to be recovered by the said former judgment, to prosecute the said writ of error with *effect*; and also to satisfy and pay (if the said judgment be affirmed) all and singular the debt, damages, and costs adjudged upon the former judgment, and all costs and damages to be also awarded upon

*Bennington,*
May,
1824.

Brace
*vs.*
Squire and
Robinson.

the delaying of execution." The next statute was the 13 Car. II. c. 2, extending the provisions of 3 Jac. I. c. 8, to a variety of cases, and giving double costs to a defendant by delay of execution by reason of error brought, if the judgment be affirmed. Next came the 16 and 17 Car. II. c. 8, extending the provisions of Jac. I. to other cases still, and requiring bonds to be given also, in error to be brought upon any judgment after *verdict* in any *writ of dower*, or in any action of *ejectione firmae*, conditioned that, in case of affirmance, discontinuance, or nonsuit, the plaintiff in such writ of error, should pay such costs, damages, and sum and sums of money, as should be awarded upon or after such judgment affirmed, discontinuance, or nonsuit had." By the expressions, " damages, and sum and sums of money," in this act, it was intended to make the plaintiff in error liable for the mesne profits, and for damages by any waste committed after the first judgment, as appears by the 4th section of the same act: and a writ of inquiry issues, in proper cases, to ascertain them. The 5th and last English statute on this subject, is the 19 Geo. III. c. 7o, extending the provisions of 3 Jac. I. to writs of error sued for the reversing of judgments given in the inferior Courts of record, where the damages are under £10 —a class of cases not embraced in any of the preceding statutes.

The provisions of the several statutes are full, unequivocal and uniform. No one can mistake the extent of liabilities of bail, in error, under them. They were familiar to our Legislature, when they passed the Judiciary Act ; or certainly so, to the distinguished Jurist who framed it. Can it possibly be contended then, that our Legislature intended to make the bail in error liable for the amount of the original judgment, in all cases, where the plaintiff in error should fail to satisfy it ? If so, why depart from expressions the best calculated to effect that object, and which, it is to be presumed, lay as a copy before them, and resort to the more equivocal language of our statute ? It could be for no other purpose than to give to the Court a different rule of damages. This conclusion is strengthened by the fact, that in directing the condition of a recognizance upon the allowance of a writ of *audita querela*, in the 11th section of the same act, the Legislature have, in substance, adopted the specific and unequivocal language of the English statutes. And there can be no doubt but in the event there contemplated, the bail must be adjudged to pay the original debt, damages, and cost.

Bennington,
May,
1824.

Brace
vs.
Squire and
Robinson.

The expression, " all damages," in the 8th section, cannot be construed as synonymous with the expression, "just damages, &c." which occurs in the last clause of the same section, and also in the 10th section. This is obvious, when we consider the necessary effect of a supersedeas in a variety of instances under our system of attachment, and arrest and bail upon mesne process, and the limited powers of the Supreme Court, in the cases contemplated in the 10th section, as applicable to those cases. It is there provided, that in case of a failure to enter and prosecute, to effect, a writ of error regularly served, or of nonsuit therein, the defendant in error may enter his *complaint* to this Court, praying for his just damages, and legal costs ; and such Court shall award to such defendant 12 per cent. interest on the original judgment, *as damages*, and his costs, and issue execution accordingly. The Legislature, in these cases, regard the record as not being removed, and that this Court have no power over the judgment, not even to affirm it ; but it remains as an existing and valid judgment, unexecuted in the Court below, and to be pursued there according to law. Yet it is obvious, that property, attached on the original process, may, in the mean time, have been discharged from the lien of such attachment ; or bail thereon from their liability, by reason of a stay of execution. And 12 per cent. interest on the original judgment, which the act itself defines as the maximum of these just damages, (even if the 12 per cent. and double costs contemplated in the 3d section of the act of 1809 should be added) might, in such case, be a very inadequate compensation for the actual damage sustained.

I am driven back therefore, to the most simple and obvious construction possible ; to wit, that the engagement to answer all damages and costs, is an undertaking, to pay all the actual damages which a defendant in error shall sustain, in consequence of the impetration and service of the writ, and the costs legally taxable in the defendant's favor upon such writ, either single or double, at the discretion of the Court. This is a construction which will do justice to all parties in all cases. It does not leave the defendant in error in a worse situation than it found him. Neither does it enable him to fix a debt, originally bad, upon the bail of the plaintiff under circumstances in which they cannot surrender their principal. The language of the statute is the broadest possible ; and evidently so

Bennington,
May,
1824.

Brace
vs.
Squire and
Robinson.
framed, with a view to meet the justice of each particular case. And surely, to give it any other construction, when it will bear this, would be a strange departure from the duty of the Court, which is to administer justice in all cases according to law.

What the measure of damages in any given case will be, must depend upon the *facts* in such case : For example, I will suppose a case under some of the varieties of circumstances in which it may actually exist.    A. sues B. for a debt of $1000, and attaches personal property to the full amount—recovers judgment and execution.    Before levy, B. brings error and supersedes the execution of A. so that he cannot, within thirty days from the time of rendering such judgment, take the property in execution.    The property is, in such case, expressly discharged by statute.    (Judiciary Act, sec. 33.)  Pending the writ of error B. disposes of the property, and becomes bankrupt.    Now it is clear that in this case, the actual damage of A. in consequence of the impetration and service of the writ of error, is the amount of his original judgment, and the use of it from the time he would have obtained it, to the time he does obtain it of the bail in error.    This, therefore, would be the measure of damage in such case.    Secondly, suppose B. did not serve his writ of error till after A. had levied his execution.    The writ of error, though a supersedeas to the execution in the former case, would not be so in this.    (Meriton *v.* Stearns, Willis 271. 1 Blac. 69.  8 Co. 191.)   Here the actual damages of A. would be merely nominal, and nominal damages and the costs on the writ of error would be all he could recover of the bail.    Thirdly, suppose again, that A. attached property to the amount of $500 only, which was all the property B. was possessed of—B. brings error, and supersedes the execution of A. whereby the lien on the $500 is lost ; but B. in the mean time remains where he was, and worth nothing : Can it be pretended, that the damages of A. in this case, exceed the actual value of the property attached ? And why should he be made better than he otherwise would have been, at the expense of the bail in error ?

If it should be said that this rule is too uncertain in its nature, I answer, it is no more so than the Legislature themselves have expressly prescribed, in a class of cases somewhat analogous—that of escapes from gaol.  (1. Stat. 281.)   No more so indeed, than that

which governs in all cases of uncertain damages. And the fact, that the bail are obligated in a sum certain, to become absolute, upon condition broken, makes no difference. The obligation, viewed in connection with the power of the Courts to chancer, amounts, in substance, to the simple undertaking before expressed, and must be governed by the same rules.

It only remains, therefore, to look into the facts on record in this case, and to see if the plaintiff upon those facts can, by possibility, have sustained any actual damage beyond the sum specified in the motion, in consequence of the impetration and service of the writ of error, upon which the defendants were recognized : And if so, this rule must be discharged; but otherwise made absolute.

But before recurring to the facts on record, I will explain what is understood by the term "final judgment," when used in connection with the liabilities of bail, or the lien upon chattels, attached upon mesne process. It is *that judgment* rendered upon the *same* process on which the bail was entered, or the goods attached, upon which the Court, rendering the judgment, is authorized by the statute to issue execution. And this is the case with every judgment rendered on the merits, " where no appeal or review is by law allowed, or where no appeal or review hath been entered, or motion in arrest of judgment, or for a new trial, has been made within the times allowed therefor." And the day on which such judgment is deemed to have been rendered, for the purposes of charging bail and holding property, is that day, on which the plaintiff is " first, by law, without leave of Court, entitled to execution thereon." (Judiciary Act, sec. 28, 29, 34, 95. Explanatory Act. of do. passed Nov. 6, 1804.)

The plaintiff in this case obtained a final judgment upon what our statute denominates a mesne process, against one Rogers, on which Rogers had been arrested and procured bail. He took out execution thereon, dated January 5, 1818, returnable in 60 days, and put it in the hands of an officer (it is presumed) in season to hold the bail. On the 2d day of March following, 56 days after the date, the officer returned the execution, with a formal return of *non est inventus* indorsed thereon. By this return, the bail on the original process was fixed. It is true that the first writ of error was served, by the same officer, on the same day ; but it is to be pre-

Bennington,
May,
1824.

Brace
vs.
Squire and
Robinson.
sumed not until after the return of the execution; for otherwise the officer would have made a return of supersedeas on the execution. At any rate, it does not lie in the mouth of the plaintiff to question the return of his own officer, with a view to charge a stranger. If, then, the first writ of error had not been void, (as it would have been no supersedeas till served) the bail would nevertheless have been fixed. And it was the plaintiff's own fault if he neglected to sue out his *scire facias* against the bail, within the year, whereby the bail was discharged: For a writ of error, which *is* a supersedeas, does not prevent the plaintiff from proceeding by *scire facias* against the bail, when once a foundation for such proceeding is laid. (1 Tidd s Prac. 471.)

It is true, the Court might stay the proceedings on the *scire facias* pending the writ of error, if they saw fit; but that must be at the instance of the bail, and would not discharge him.

The next material fact, legally to be inferred from the record, as set forth on oyer of all the proceedings, and which was understood to be expressly alleged and admitted on the argument, is, that after the return of the first execution, the plaintiff never prayed out any other execution on that judgment. The consequence of which was, that on the 5th day of March, 1819, a year and a day after the expiration of the first execution, the vital powers and faculties of the judgment became, as it were, suspended by operation of law, and must remain forever lost to him, without some new act on his part to reanimate it. It is true, that at common law, when the defendant occasions the delay, the plaintiff may take out execution at any time within the year and day after the cause of delay has ceased to exist. But it must be a legal cause. It is not sufficient that the plaintiff *in fact* delays, for a reason, which, in law, was no impediment in the way of his proceeding. The supersedeas of a writ of error is an accident—a quality of the writ which the law attributes to it, and can have no existence independently of the writ itself. The one being void, the other had no existence. The delay, therefore, was the plaintiff's delay. And it was not until the 9th of June, 1819, more than three months after the plaintiff's judgment had, by his own neglect, become incapable of execution, that the writ of error complained of became clothed with the power of a supersedeas. But the plaintiff had nothing on which that power could exert it-

self. A supersedeas only affects the execution. It does not af- *Bennington, May, 1824.* fect the validity of the judgment—that remains as it was, until a judgment of reversal. It does not prevent the plaintiff from pro- Brace ceeding by action of debt or *scire facias*, on the judgment against *vs* Squire and the principal. And this is all that the plaintiff could have done Robinson. with his judgment in its actual state, from the time of the service of the second writ of error, till the affirmance of the judgment upon it. The plaintiff, therefore, can have sustained no actual damage, in consequence of the impetration and service of this writ, and was entitled to none as against the bail.

Rule made absolute.